2026 IL App (3d) 250121

Opinion filed July 30, 2026

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2026

| | | |
|---|---|---|
| *In re* MARRIAGE OF CYNTHIA V. RAINE, | ) | Appeal from the Circuit Court |
| | ) | of the 18th Judicial Circuit, |
| Petitioner-Appellee, | ) | Du Page County, Illinois. |
| | ) | |
| and | ) | Appeal No. 3-25-0121 |
| | ) | Circuit No. 08-D-1207 |
| TALMAGE J. RAINE, | ) | |
| | ) | The Honorable |
| Respondent-Appellant. | ) | Leah D. Setzen, |
| | ) | Judge, Presiding. |

_____

JUSTICE ANDERSON delivered the judgment of the court.
Presiding Justice Hettel and Justice Bertani concurred in the judgment.

_____

**OPINION**

¶ 1    This case arises from the dissolution of marriage between Cynthia Raine and Talmage Raine. The issue is whether Cynthia can attach assets held in Talmage's retirement account. Ordinarily, retirement accounts are exempt from attachment, but Cynthia argues that an exception exists when the attachment is to satisfy an outstanding child support or maintenance obligation. The trial court agreed with Cynthia and entered a turnover order. We affirm.

¶ 2                                    I. BACKGROUND

¶ 3    The parties married in October 1980. In June 2008, Cynthia filed a petition for dissolution of the marriage. In February 2009, the trial court entered a judgment of dissolution and further

ordered Talmage to pay Cynthia $12,000 a month as maintenance. Talmage was also ordered to pay Cynthia for a property settlement and to maintain a term life insurance policy with Cynthia as cotrustee.

¶ 4        In January 2011, Talmage filed a petition for relief from judgment under section 2-1401 of the Code of Civil Procedure (Code) (735 ILCS 5/2-1401 (West 2010)), claiming that the marital settlement agreement was unconscionable and procured by fraud. The trial court denied Talmage's section 2-1401 petition, and the Appellate Court, Second District, affirmed. See *In re Marriage of Raine*, 2013 IL App (2d) 120665-U.

¶ 5        While that appeal was pending, Cynthia filed two petitions for a rule to show cause based on Talmage's unpaid monthly maintenance payments and nonpayment of the property settlement. In November 2013, the trial court entered an agreed judgment against Talmage for his failure to pay the property settlement, maintenance, and interest. Per the order, the trial court directed Talmage to maintain a life insurance policy, naming Cynthia as beneficiary, with sufficient coverage to satisfy all unpaid obligations. Additionally, the trial court reduced Talmage's monthly maintenance to $5,000.

¶ 6        In October 2016, Cynthia brought another petition for a rule to show cause, asserting Talmage's failure to pay maintenance. In June 2018, the trial court entered another agreed order reflecting that Talmage had a $176,000 maintenance arrearage and $26,185 in interest due on that arrearage. Cynthia conditionally waived the $26,185 in interest, and the parties agreed to the entry of a judgment against Talmage in the amount of $191,000, consisting of $176,000 in maintenance arrearages and $15,000 for Cynthia's attorney fees and costs in pursuing the arrearage. The agreed order provided that, if Talmage failed to comply with the June 2018 order, the $26,185 in interest waived by Cynthia would be reinstated. The trial court also ordered Talmage to pay $2,500 a

month toward the $191,000 balance due until January 31, 2021, when monthly maintenance would end. After that, he was to pay $7,500 a month until the arrearage was satisfied.

¶ 7        In October 2022, Cynthia filed another petition for a rule to show cause based on Talmage's failure to abide by the November 2013 and June 2018 orders. Count I of the petition claimed Talmage failed to comply with the June 2018 order by not making the required monthly payments; at the time of the petition, she alleged there was a $165,000 outstanding balance due on the $191,000 judgment. Count II of the petition claimed Talmage failed to provide Cynthia with written proof that the life insurance policy remained in effect, in violation of the November 2013 order. During the March 2024 hearing on the petition, Cynthia argued that Talmage failed to pay her, choosing instead to pay off other debts. On direct examination, Talmage acknowledged that he opened an annuity account with Jackson National Life Insurance Company (Jackson Life) in January 2022 and testified that he suffered a career-ending stroke in November 2022.

¶ 8        In April 2024, the trial court granted count I of Cynthia's November 2022 petition for a rule to show cause but denied count II. In its oral ruling, the trial court noted that Talmage never requested any modification of either the maintenance payment plan or the repayment plan. The court then found Talmage in indirect civil contempt of court for his willful failure to make $116,000 in arrearage payments and two $5,000 maintenance payments, as required in the June 2018 order, for a total arrearage of $126,000. The April 2024 order also reflected a finding that Talmage owed an additional $96,752.50 in interest, comprising $26,185 accrued from January 1, 2014, through May 31, 2018, that was conditionally waived in the June 2018 order; $67,642.50 on the remaining balance of the $191,000 judgment; and $2,925 on later unpaid maintenance. The court set the purge amount at $44,000, which Talmage paid within the 60 days mandated in the order.

3

¶ 9        Following entry of the April 2024 order, Cynthia served a third-party citation to discover assets on Jackson Life for any funds it held on Talmage's behalf, and Jackson Life responded that it was holding $137,381.68 in a variable annuity policy. On June 11, 2024, Cynthia filed a petition for the turnover of those funds. Talmage filed a motion to strike and dismiss Cynthia's turnover petition, which was granted in part and denied in part; the trial court also granted Cynthia leave to amend her petition.

¶ 10       In August 2024, Cynthia filed an amended petition to turn over those assets that were identified through the third-party citation. Throughout the trial court proceedings, Talmage had argued that, under section 12-1006 of the Code (735 ILCS 5/12-1006 (West 2024)), his Jackson Life annuity was exempt. Cynthia claimed that, because the money owed to her was for support arrearages, the exemption ought not apply. Cynthia further asserted that, even if support payments did not constitute an exception under the Income Withholding for Support Act (Withholding Act) (750 ILCS 28/1 *et seq.* (West 2024)), Talmage was not entitled to claim the statutory exemption because the annuity was created in an attempt to defraud her.

¶ 11       In January 2025, the trial court orally granted Cynthia's amended petition for turnover of funds held in the Jackson Life account. The court found that, while retirement assets are generally exempt under section 12-1006 of the Code, the maintenance obligations entered against Talmage triggered exceptions under section 15 of the Withholding Act (*id.* § 15). Additionally, the trial court found that the facts did not show that Talmage intended to defraud Cynthia by converting nonexempt property into exempt property when he opened the annuity nor that his conduct otherwise disqualified the annuity from the exemption. In February 2025, the trial court issued its written order granting Cynthia's amended turnover request and directing Jackson Life to transfer

4

all funds held in the annuity account to an escrow account. On March 4, Talmage filed his timely notice of appeal.

¶ 12                                    II. ANALYSIS

¶ 13        The issue on appeal is whether the trial court erred in determining that Talmage's annuity account was subject to a turnover order for the payment of maintenance arrearages and interest in light of a statutory exception under the Withholding Act (*id.*). To resolve that issue, we must construe the applicable statutory provisions. When the language of a statute is clear, it must be given effect without resort to other aids of statutory construction. *In re Marriage of Mitchell*, 181 Ill. 2d 169, 173 (1998). Issues of statutory construction present pure legal questions that we review *de novo*. *Dowling v. Chicago Options Associates, Inc.*, 365 Ill. App. 3d 341, 350 (2006). Under *de novo* review, we give no deference to the trial court's reasoning. *Goodman v. Ward*, 241 Ill. 2d 398, 406 (2011).

¶ 14        Under subsection (b)(5) of section 2-1402 of the Code, "[p]ension and retirement benefits and refunds may be claimed as exempt under Illinois law." 735 ILCS 5/2-1402(b)(5) (West 2024). Additionally, qualified pension and retirement benefits are generally exempt from attachment under section 12-1006 of the Code (*id.* § 12-1006). Section 12-1006(a) states,

> "[a] debtor's interest in or right, whether vested or not, to the assets held in *** annuities *** under a retirement plan is exempt from judgment *** and seizure for the satisfaction of debts if the plan (i) is intended in good faith to qualify as a retirement plan under applicable provisions of the Internal Revenue Code." *Id.* § 12-1006(a).

¶ 15        As the trial court noted, the parties appeared to agree that the Jackson Life annuity was a qualified retirement plan under section 12-1006. Neither party seriously contests that conclusion on appeal, and we agree that, under sections 2-1402(b)(5) and 12-1006 of the Code, the annuity is

5

a qualified plan that is generally exempt from attachment. But the case turns on whether an exception in the Withholding Act (750 ILCS 28/15 (West 2024)) applies to that statutory exemption.

¶ 16    Section 15 of the Withholding Act states:

"(a) 'Order for support' means any order of the court which provides for periodic payment of funds for the support of a child or maintenance of a spouse, whether temporary or final, and includes any such order which provides for:

(1) modification or resumption of, or payment of arrearage, including interest, accrued under a previously existing order;

(2) reimbursement of support;

* * *

(b) 'Arrearage' means the total amount of unpaid support obligations, including interest, as determined by the court and incorporated into an order for support.

* * *

(d) 'Income' means any form of periodic payment to an individual, regardless of source, including, but not limited to: *** annuity, pension, and retirement benefits, *** and any other payments, made by any person, private entity ***; however, 'income' excludes:

(1) any amounts required by law to be withheld, other than creditor claims, including, but not limited to, federal, State and local taxes, Social Security and other retirement and disability contributions;

* * *

Any other State or local laws which limit or exempt income or the amount or percentage of income that can be withheld shall not apply." *Id.* § 15(a)(1), (2), (b), (d)(1).

6

¶ 17 In our view, Talmage's argument—that section 15's text does not go as far as Cynthia claims—is not untenable. Section 15 is largely a definition statute, and its language is not terribly robust. But Talmage's argument has been repeatedly rejected by Illinois courts.

¶ 18 In *Jakubik v. Jakubik*, 208 Ill. App. 3d 119, 123 (1991), the court held that an individual retirement account was exempt from judgment, subject to a statutory exception for maintenance and child support. In 1993, Illinois's statutes were recodified. Relying on the predecessor statutes to section 15 of the Withholding Act and section 706.1 of the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/706.1 (West 2024)), the court further stated:

> "The withholding provisions for child support and maintenance of both section 706.1 of the Illinois Marriage and Dissolution of Marriage Act (the Dissolution Act) (Ill. Rev. Stat. 1983, ch. 40, par. 706.1) and section 1107.1 of the Non-Support of Spouse and Children Act (the Non-Support Act) (Ill. Rev. Stat. 1983, ch. 40, par. 1107.1) expressly take precedence over contrary laws. 'Any other State or local laws which limit or exempt income [available to pay child support or maintenance] shall not apply.' (Ill. Rev. Stat. 1983, ch. 40, par. 706.1(A)(4)(e); ch. 40, par. 1107.1(A)(4)(e).) So, too, both allow withholding of income 'regardless of source' for the purpose of securing support obligations. (Ill. Rev. Stat. 1983, ch. 40, par. 706.1(A); ch. 40, par. 1107.1.) Thus, the express language of the Dissolution Act and the Non-Support Act unequivocally creates an exception to the personal property exemption statutes for child support and maintenance obligations without mention of attorney fees." *Id.* at 124.

The *Jakubik* court declined, however, to extend this exception to attorney fees, even if incurred in connection with the pursuit of maintenance or support payments. *Id.* at 125-26.

7

¶ 19    In *In re Marriage of Murphy*, 338 Ill. App. 3d 1095, 1098 (2003), the court, interpreting section 15(d) of the Withholding Act, held that the defendant's retirement benefits were "subject to judicial process for the satisfaction of child support arrearages," relying on *In re Marriage of Logston*, 103 Ill. 2d 266, 284 (1984). Then, in *In re Marriage of Takata*, 383 Ill. App. 3d 782 (2008), the court applied this principle, making the husband turn over funds in his individual retirement account to satisfy past-due child support. The court relied on section 15(d) and stated "section 15(d) *** provides an exception to this income exemption" and "states that income includes any payment from annuity, pension, and retirement benefits and [further states] that [a]ny other State or local laws which limit or exempt income or the amount or percentage of income that can be withheld shall not apply." (Internal quotation marks omitted.) *Id.* at 788.

¶ 20    The exception was again recognized, more recently, in *In re Marriage of Altman*, 2016 IL App (1st) 143076. There, the court reiterated that "child support and maintenance obligations are statutory exceptions" to section 12-1006 of the Code. *Id.* ¶ 21. While we acknowledge that the text of Withholding Act section 15 might have some wiggle room for argument, we cannot conclude that the approach adopted by the foregoing courts was unreasonable, and we are not inclined to depart from over 35 years of case law.

¶ 21    Our supreme court has also recognized that interpretation of the language that Cynthia argues creates the exception for support payments. In *In re Hernandez*, 2020 IL 124661, ¶¶ 19-20, the court characterized section 15(d) of the Withholding Act as expressing "that intention in language so clear and explicit that it could not be misunderstood." Although *Hernandez* involved an unsuccessful attempt to expand that exception to the payment of a healthcare provider from workers' compensation monies, the court's rationale expressly recognized that the language in

section 15(d) created an exception to the exemption in section 12-1006 for support obligations. Accordingly, we reject Talmage's narrow construction of section 15.

¶ 22 We also reject Talmage's argument that, because child support and maintenance are distinct concepts under the Marriage Act (750 ILCS 5/101 *et seq.* (West 2024)), the legislature intended them to be treated differently. While it is true that child support is governed by section 505 of the Marriage Act (*id.* § 505) and maintenance is governed by section 504 (*id.* § 504), *both* orders entered under the Marriage Act "are subject to the Income Withholding for Support Act [750 ILCS 28/1 *et seq.* (West 2024)]" (750 ILCS 5/706.1 (West 2024)). Further, they are both referenced in section 15(a) of the Withholding Act. Indeed, under section 15(a), an "order of support" includes "any order of the court *** for the support of a child *or* maintenance of a spouse." (Emphasis added.) 750 ILCS 28/15(a) (West 2024). Because the statutory language is clear and unambiguous, it must be given effect without resort to any other aids of statutory construction. *Mitchell*, 181 Ill. 2d at 173. Accordingly, we reject Talmage's claim that the legislature intended for child support and maintenance to be treated differently in this context.

¶ 23 Likewise, we reject Talmage's attempt to distinguish between assets and income. We acknowledge that section 15 speaks to "income" rather than accumulated assets. But that distinction is less meaningful in the context of retirement benefits. Section 15 expressly defines income to include "annuity, pension, and retirement benefits." 750 ILCS 28/15(d) (West 2024). Cynthia does not seek turnover of an unrelated capital asset; she seeks turnover of funds held in Talmage's retirement annuity—the very type of retirement benefit the legislature identified as income. The fact that those benefits remain in the annuity, rather than having already been distributed in periodic payments, does not alter their essential character for purposes of section 15. Accepting Talmage's interpretation would mean that retirement benefits are subject to withholding

9

only after they leave the retirement account, even though section 15 specifically includes annuities, pensions, and retirement benefits within its definition of income. We do not believe the legislature intended the applicability of the exception to turn on that purely temporal distinction. We also note that our conclusion is consistent with *Takata*, 383 Ill. App. 3d at 788, which involved a lump sum in an individual retirement account.

¶ 24                                                        III. CONCLUSION

¶ 25             For the reasons stated, we affirm the decision of the circuit court of Du Page County.

¶ 26             Affirmed.

*In re Marriage of Raine*, 2026 IL App (3d) 250121

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Du Page County, No. 08-D-1207; the Hon. Leah D. Setzen, Judge, presiding. |
| **Attorneys for Appellant:** | Robert G. Black, of Law Office of Robert G. Black, P.C., of Naperville, for appellant. |
| **Attorneys for Appellee:** | Dion U. Davi, of Davi Law Group, LLC, of Naperville, for appellee. |